**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CURALEAF HOLDINGS, INC. SECURITIES LITIGATION | Case No. 1:19-cv-04486-BMC |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'**
**AMENDED CLASS ACTION COMPLAINT**

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
Matthew M. Guiney, Esq.
Kevin G. Cooper, Esq.
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
guiney@whafh.com
kcooper@whafh.com

*Lead Counsel for Plaintiffs and the Class*

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS .................................................................................... 2

        A.      CBD History and Regulation ................................................................... 3

        B.      Curaleaf's History and Relevant Class Period Statements ..................... 4

        C.      The Truth is Revealed .............................................................................. 7

III.    ARGUMENT ........................................................................................................ 8

        A.      Defendants' Jurisdictional Arguments are Without Merit ....................... 9

        B.      The Amended Complaint Adequately Alleges False and Misleading
                Statements or Omissions of Material Fact ............................................. 11

                1.      Defendants' False And Misleading Statements and Omissions .............. 11

                2.      Defendants' Statements and Omissions Concerning The Health
                        Benefits of its Products were False and Misleading ................................ 14

                3.      Defendants' "Truth-On-The-Market" Defense Is Inapposite .................. 17

IV.     THE AMENDED COMPLAINT ADEQUATELY ALLEGES SCIENTER .................. 20

V.      THE AMENDED COMPLAINT ADEQUATELY ALLEGES CONTROL
        PERSON LIABILITY UNDER SECTION 20(a) ............................................................. 24

VI.     LEAVE TO AMEND SHOULD BE FREELY GRANTED ............................................ 25

VII.    CONCLUSION .................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**CASES**                                                                                                                          **Page(s)**

*380544 Can., Inc. v. Aspen Tech., Inc.*,
   544 F. Supp. 2d 199 (S.D.N.Y. 2008)...............................................................................................25

*Absolute Activist Master Fund LLC v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012)...............................................................................................................9

*Alpha Capital Anstalt v. New Generation Biofuels, Inc.*,
   No. 13-CV-5586 (VEC), 2014 U.S. Dist. LEXIS 161472 (S.D.N.Y. Nov. 18, 2014) ...............10

*In re Andrx Corp.*,
   296 F. Supp. 2d 1356 (S.D. Fla. 2003) ...........................................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................................8

*Asher v. Baxter Int'l Inc.*,
   377 F.3d 727 (7th Cir. 2004) ..........................................................................................................13

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
   324 F. Supp. 2d 474 (S.D.N.Y. 2004)..............................................................................................22

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..............................................................................................................25

*In re Avon Sec. Litig.*,
   No. 19 Civ. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) .................................24

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
   980 F. Supp. 564 (S.D.N.Y. 2013)..........................................................................................18, 19

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
   No. 09 MD 02058, 2011 WL 3211472 (S.D.N.Y. July 29, 2011).............................................21

*Barilli v. Sky Solar Holdings, Ltd.*,
   389 F. Supp. 3d 232 (S.D.N.Y. 2019)..............................................................................................19

*In re Barrick Gold Sec. Litig.*,
   No. 13 CIV. 3851 SAS, 2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015) ......................................23

*Beleson v. Schwartz*,
   419 Fed. App'x 38 (2d Cir. 2011).....................................................................................................20

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132 (CM)(THK),
  2013 U.S. Dist. LEXIS 44948 (S.D.N.Y. Mar. 25, 2013) ............................................................8

*CompuDyne v. Shane*,
  453 F. Supp. 2d 807 (S.D.N.Y. 2006)...............................................................................24

*Cortina v. Anavex Life Sciences Corp.*,
  No. 15-cv-10162 (JMF), 2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) ...................................22

*In re Delcath Sys. Sec. Litig.*,
  36 F. Supp. 3d 320 (S.D.N.Y. 2014)...................................................................................13

*DiStefano v. Carozzi N. Am., Inc.*,
  286 F.3d 81 (2d Cir. 2001)...................................................................................10

*In re Egalet Corp. Sec. Litig.*,
  340 F. Supp. 3d 479 (E.D. Pa. 2018) ...................................................................................24

*In re Eletrobras Sec. Litig.*,
  245 F. Supp. 3d 450 (S.D.N.Y. 2017)...................................................................................23

*Emerson v. Mut. Fund Series Tr.*,
  393 F. Supp. 3d 220 (E.D.N.Y. 2019) ...................................................................................12

*Freudenberg v. E\*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010)...................................................................................12

*Galestan v. OneMain Holdings, Inc.*,
  348 F. Supp. 3d 282 (S.D.N.Y. 2018)...................................................................................23

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000)...................................................................................18

*Giunta v. Dingman*,
  893 F.3d 73 (2d Cir. 2018)...................................................................................9

*Gregory v. ProNAi Therapeutics, Inc.*,
  297 F. Supp. 3d 372 (S.D.N.Y. 2018)...................................................................................16

*In re Guidant Corp. Sec. Litig.*,
  No. 1:03-CV-0892-SEB-WTL,
  2004 U.S. Dist. LEXIS 22809 (S.D. Ind. Nov. 8, 2004) ...........................................................16

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
  791 F.3d 90 (D.C. Cir. 2015)...................................................................................14

iii

*In re Henry Schein Secs. Litig.*,
   18-cv-01428, 2019 U.S. Dist. LEXIS 230571 (E.D.N.Y Sept. 27, 2019) ....................................8

*In re Iso Ray Sec. Litig.*,
   189 F. Supp. 3d 1057 (E.D. Wash. 2016) .................................................................................12

*In re KeySpan Corp. Sec. Litig.*,
   383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...............................................................................11, 19

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)..............................................................................................................8, 11

*Meyer v. Jinkosolar Holdings Co.*,
   761 F.3d 245 (2d Cir. 2014)....................................................................................................14

*Morrison v. National Australia Bank Ltd*,
   561 U.S. 247 (2010).............................................................................................................9, 10

*Myun-Uk-Choi v. Tower Research Capital LLC*,
   890 F.3d 60 (2d Cir. 2018)........................................................................................................9

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Gp., PLC*,
   709 F.3d 109 (2d Cir. 2013).................................................................................................19, 20

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)......................................................................................................21

*In re Pall Corp.*,
   No. 07-CV-3359 (JS)(ARL), 2009 WL 3111777 (E.D.N.Y. Sept. 21, 2009) ...........................21

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007).......................................................................................23

*In re Rhodia S.A. Sec. Litig.*,
   531 F. Supp. 2d 527 (S.D.N.Y. 2007).......................................................................................24

*Robb v. FitBit*,
   216 F. Supp. 3d 1017 (N.D. Cal. 2016) ....................................................................................17

*In re Rockwell Med., Inc. Sec. Litig.*,
   No. 16 Civ 1691 (RJS), 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ...................................22

*In re Sanofi-Aventis Sec. Litig.*,
   774 F. Supp. 2d 549 (S.D.N.Y. 2011)..................................................................................12, 17

*S.E.C. v. Gabelli*,
   653 F.3d 49 (2d Cir. 2011), *rev'd on other grounds*,
   *Gabelli v. S.E.C.*, 568 U.S. 442 (2013) ...................................................................................11

*S.E.C. v. StratoComm Corp.*,
   652 Fed. App'x 35 (2d Cir. 2016)..........................................................................................11

*Shemian v. Research In Motion Ltd.*,
   No. 11 Civ. 4068, 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013) ...........................................22

*Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*,
   412 F.3d 103 (2d Cir. 2005)...................................................................................................19

*Steamfitters' Indus. Pension Fund v. Endo Int'l PLC*,
   771 Fed. App'x 494 (2d Cir. 2019) ........................................................................................16

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
   531 F.3d 190 (2d Cir. 2008)............................................................................................21, 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..........................................................................................................9, 21

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016)...................................................................................................16

*United States v. Georgiou*,
   777 F.3d 125 (3d Cir. 2015)...................................................................................................10

*In re Vale S.A. Sec. Litig.*,
   No. 19 CV 526 (RJD) (SJB), 2020 U.S. Dist. LEXIS 91150 (E.D.N.Y. May 20, 2020)...........23

## STATUTES AND RULES

Securities Exchange Act of 1934, 15 U.S.C. § 78(a), *et seq.*
   § 78j(b) ("Section 10(b)")....................................................................................................9, 24
   § 78t(a) ("Section 20(a)") .......................................................................................................24

SEC Rule 10b-5 (17 C.F.R. § 240.10b-5)..................................................................................8, 11

Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.* .............................................7, 15

Lead Plaintiff Warren Basch and additional party plaintiffs W. Frank Klun and Laura Klun (collectively, the "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint.  ECF No. 42.[1]

## I.    INTRODUCTION

Defendants have knowingly and recklessly misled investors by touting the quality, effectiveness, safety, health and medical benefits of Curaleaf's CBD-based products in press releases, while omitting the fact that these products ***were not approved by the FDA and were, consequently, illegal to sell under federal law***.  Defendants also knowingly and recklessly misled investors by representing that Curaleaf's CBD-based products were beneficial for human and animal health, and could treat medical conditions, when the FDA had never deemed the products safe or effective.

The Defendants argue that this is a "particularly weak securities fraud case" because Curaleaf purportedly disclosed the "precise risk it is accused of omitting" – namely the "risk that [Curaleaf] would be subject to FDA enforcement."  Def. Mem. at 1.  Indeed, the Defendants argue that "the ***only*** information the Amended Complaint suggests it should have disclosed [is] that the [Food and Drug Administration ("FDA")] had not approved the Company's products and the Company was therefore at ***risk*** of FDA regulation."  Def. Mem. at 15 (emphasis added).[2]

---

[1]  Defendants are Curaleaf Holdings, the parent company of Curaleaf, Inc. (collectively, "Curaleaf" or the "Company"), Joseph Lusardi (the Company's CEO), Neil Davidson (the Company's CFO), and Jonathan Faucher (the Company's CFO from January 2017 through February 2019.

[2]  Defendants repeat this characterization, in slightly differing form, throughout the brief.  *See* Def. Mem. at 2, 10 ("risk of FDA enforcement"); at 2 (FDA "potential regulation"); at 3, 11 ("risk of federal regulation"); at 3, 8, 9, 13, 15, 16, 17, 19 ("risk of FDA Regulation"); at 4 ("potential for FDA regulation"); at 7 ("risk of potential FDA regulation"); at 16 ("risk of regulating CBD products").

Defendants' argument misconstrues the severity of their omissions.  Defendants did not simply omit that Curaleaf was subject to *potential* regulation at some indefinite and speculative point in the future.  Defendants omitted that the Company's products had *not received regulatory approval*, *and their sale was therefore illegal*.  Indeed, the Defendants *concede* that they made *no mention* of the FDA or FDA approval (or lack thereof), and consequent illegality of their product's sale, in either of the most critical press releases at issue in this case: Curaleaf's November 21, 2018 press release announcing its new "Curaleaf Hemp" line of CBD products or the May 10, 2019 press release announcing the new Bido line of CBD products for pets.  Def. Mem. at 9-10.

When the FDA ultimately took action to halt the illegal sale of Curaleaf's CBD-based products, the truth was revealed and Curaleaf investors were harmed.  As set forth below, the Amended Complaint adequately alleges that the Defendants made material misrepresentations and omissions, and did so with scienter.  As a consequence, Defendants' motion to dismiss should be denied.

## II.    STATEMENT OF FACTS

This is a federal securities class action on behalf of all Curaleaf securities purchasers on the OTCQX between November 21, 2018 and July 22, 2019 (the "Class Period").[3]  Plaintiffs seek to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under the Exchange Act of 1934.

---

[3] The OTCQX is a U.S. market for companies already listed on a qualified international stock exchange.

2

## A.    CBD History and Regulation

CBD – shorthand for cannabidiol – is a chemical compound found in plants in the cannabscae family.  CBD can be extracted from hemp or from marijuana.[4] CBD-based products have grown significantly in popularity in recent years, with companies selling topical creams and lotions, beverages, dietary supplements and tinctures, vape pens, bath bombs, pet treats and cosmetics with various levels of CBD.  Although retailers like Curaleaf routinely extoll CBD's purported health benefits and treatment capabilities concerning a range of health issues, the FDA has raised significant red flags about the safety of CBD: "we have seen only limited data about CBD's safety and these data point to real risks that need to be considered."  In fact, the FDA had approved *only one drug product* containing CBD and has raised significant concerns about safety.  July 22, 2019 FDA Letter at 8.

On December 20, 2018, the FDA detailed its ongoing regulation of CBD products, and its intention to take enforcement action in relation to the illegal sale of CBD products.  The FDA explicitly stated that selling unapproved products with unsubstantiated therapeutic claims is not only "*a violation of the law*" and "*illegal*" but also put "patients at risk, as these products *have not been proven to be safe or effective*."  Amended Complaint at ¶ 39.  The FDA's website was as clear:

- "Can THC or CBD products be sold as dietary supplements?  *No*."

- "Is it legal, in interstate commerce, to sell a food (including any animal food or feed) to which THC or CBD has been added?  *No*."

---

[4] Hemp plants are cannabis plants that contain less than 0.3 percent tetrahydrocannabinol ("THC"), while marijuana plants are cannabis plants that contain higher concentrations of THC. THC is the main psychoactive compound in marijuana that gives the "high" sensation. It can be consumed by smoking marijuana.  In contrast, CBD is a non-psychoactive compound and, consequently, it does not produce the "high" associated with THC.

3

*Id*. at ¶¶ 42-43.  The FDA also explicitly warned that it had not approved *any* CBD products for pets and animals.  *Id.* at ¶ 42.  These warnings continued through 2019.  For example, in April 2019, the FDA explained as follows:   "Selling unapproved products with unsubstantiated therapeutic claims can put patients and consumers at risk. These products have not been shown to be safe or effective, and deceptive marketing of unproven treatments may keep some patients from accessing appropriate, recognized therapies to treat serious and even fatal diseases."[5]   In short, by December 2018, if not earlier, the FDA had made it explicitly clear that marketing CBD products advertised to have health benefits, without FDA approval, was *illegal* and that the FDA would take enforcement action against retailers doing so.

### B.    Curaleaf's History and Relevant Class Period Statements

Curaleaf describes itself as "the leading vertically integrated multi-state cannabis operator in the United States" and held itself out as a fast-growing, successful company selling a cutting-edge product with significant health benefits during the class period.  In particular, on November 21, 2018, Curaleaf announced "a line of premium hemp-based CBD products" including oil droplets, soft gel capsules and vape pens.  The products were described as "premium," meeting "the strictest quality standards" and "supporting overall wellness."   Amended Complaint at Exhibit B.  During a conference call concerning the products' launch, Defendant Lusardi drew a distinction between the new CBD-based products and other marijuana-based products:

> The interstate regulations for CBD are *vastly different than that of our THC products*, which will give us the opportunity to offer these products through e-commerce, major third party retailers,

---

[5] "Statement from FDA Commissioner Scott Gottlieb, M.D., On New Steps To Advance Agency's Continued Evaluation of Potential Regulatory Pathways for Cannabis-Containing and Cannabis-Derived Products" (Apr. 2, 2019), available at https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-new-steps-advance-agencys-continued-evaluation.

> pharmacy chains and grocery stores, in addition to vape shops and dispensaries. We are very enthusiastic about this opportunity and hope to announce a number of significant third-party distribution agreements in 2019.

Amended Complaint at ¶ 70.   (Emphasis added).   But as the Defendants concede, the announcement made "no mention to the FDA" or FDA regulation whatsoever.  Def. Mem. at 9-10.

On May 10, 2019, Curaleaf announced a new CBD-based line of products for pets, in the forms of "pet drops" and "soft-baked bites."  The product line – called Bido – was  purportedly designed to "support a pet's overall wellness including the potential to help manage pain and anxiety."  Amended Complaint at ¶ 88.  Again, the Defendants concede that the announcement "made no reference to the FDA" whatsoever.  Def. Mem. at 10.

In short, the Defendants made statements as to the quality, effectiveness, safety, health and medical benefits of Curaleaf's CBD-based products when announcing its new products to great fanfare, but failed to disclose that those products ***were not approved by the FDA and were, consequently, illegal under federal law*** when making the public announcements in November 2018 and May 2019.  Indeed, the Defendants ***conceded*** that no such disclosures were made at those times.   In this way, both press releases gave investors the misleading belief that the products were both legal and provided the touted health benefits.

Nevertheless, Defendants argue that the "risks of FDA regulation" were disclosed because ***other*** regulatory documents filed in Canada purportedly made the risks clear.  In so doing, Defendants rely on boilerplate disclosure documents which simply provided vague, circumscribed or irrelevant warnings as follows:

- October 2018 Listing Statement: the document merely discloses that cannabis is illegal under federal law.  *See* Amended Complaint at ¶ 58.  This document

5

predates Curaleaf's CBD-based product announcements as well, and does not disclose that selling CBD-based products (as opposed to cannabis itself) is illegal under federal law. Indeed, the Listing Statement drew a clear distinction between cannabis *itself* and "isolated cannabinoids (such as cannabidiol ("CBD") and THC)." Listing Statement at 90. Furthermore, Defendant Lusardi highlighted the very same distinction when announcing Curaleaf's CBD-based product line, observing that "[t]he interstate regulations for CBD are *vastly different* than that of" Curaleaf's other product lines. Amended Complaint at ¶ 70.

- November 2018 disclosures: this document merely referred back to the October 2018 Listing Statement.

- January 2019 disclosures: this document merely referred back to the October 2018 Listing Statement.

- April 2019 disclosures: "the FDA *ma*y regard any promotion of the cannabis-based products as the promotion of an unapproved drug." (Emphasis added). In addition to the circumscribed warning, the document was not filed with the OTCQX until well *after* Curaleaf announced either its human or pet-based CBD products. Furthermore, these disclosures are not referenced, at all, in either of the most critical press releases at issue in this action. Finally, the document failed to explicitly state that Curaleaf's CBD-based products were illegal because the FDA had not approved them nor was in the process of doing so.

- May 2019 disclosures: this document merely referred back to the April 2019 disclosure document.

6

In short, none of these disclosures indicate that Curaleaf's CBD-based products touted in November 2018 and May 2019 were illegal under U.S. federal law and none of these disclosures were included in those press releases in any event.

### C.    The Truth is Revealed

On July 22, 2019, the FDA issued a warning letter to Curaleaf addressing the improper and illegal marketing and selling of CBD-based products as dietary supplements, and selling unapproved new animal drugs in violation of the Federal Food, Drug and Cosmetic Act.  The FDA letter exposed two facts that had previously been misstated and omitted by Curaleaf.  First, the letter explicitly detailed the fact that Curaleaf's products were *illegal* under federal law, *e.g.,* that a number of Curaleaf's CBD products were "unapproved new drugs," "misbranded drugs," and "unapproved new animal drugs that are unsafe . . . and adulterated" *in violation of the Federal Food, Drug and Cosmetic Act.* July 22, 2019 FDA Letter at 3.  Second, the letter explained that Curaleaf's repeated statements about the health benefits associated with its products were *without any basis whatsoever*: "these products are not approved [. . .] and therefore these products are considered *unsafe*." *Id.* at 8.

The FDA letter garnered significant attention in the media.  *CNN* reported that Curaleaf had made "*unsubstantiated health claims*" and observed that the "biggest enemy isn't the FDA or the DEA, but CBD companies making false claims." Amended Complaint at ¶ 98. (Emphasis added).  The *Boston Globe* highlighted Curaleaf's unsubstantiated claims that CBD could treat illnesses like cancer and the FDA's concerns of harm to patients from CBD products marketed in this way, reporting that the "FDA blasted Curaleaf's claims that its CBD products can treat chronic pain, eating disorders, anxiety, attention deficit hyperactivity disorder, Alzheimer's disease, Parkinson's disease, depression, post-traumatic stress disorder, schizophrenia, and addiction." *Id.* at ¶ 99.   The article quoted David Gortler, a former FDA official and

pharmacologist, who stated "[t]he jury is still out on this drug" and that the FDA protected people from "snake oil salesmen." *Id*. Andrew Kessner, analyst at William O'Neil & Co., said that it was not surprising that the first major action was against Curaleaf because it had "made the largest push into CBD." *Id.* at ¶ 100.

As a result of the FDA Letter, Curaleaf shares fell $0.58 per share, or 7.27% to close at $7.40 per share on July 23, 2019, damaging investors. Curaleaf was forced to remove the statements highlighted in the FDA Letter and to discontinue the sale of many of the products referred to in the FDA letter as a consequence.

## III.    ARGUMENT

A claim for a primary violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5 must allege: "(1) a material misrepresentation or omission … [falsity]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance …; (5) economic loss; and (6) loss causation. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (internal quotations omitted). To survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *In re Henry Schein Secs. Litig.*, 18-cv-01428, 2019 U.S. Dist. LEXIS 230571, at **21-22 (E.D.N.Y Sept. 27, 2019) (quoting *Maston v. Bd. of Educ.,* 631, F.3d 57 (63 (2d Cir. 2011)); *cf. City of Providence v. Aeropostale, Inc.*, 2013 U.S. Dist. LEXIS 44948, *42 (S.D.N.Y. Mar. 25, 2013) ("The inference need not, however, be 'irrefutable, *i.e.*, of the 'smoking-gun' genre, or

8

even the most plausible of competing inferences.'") (quoting *Tellabs Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 324 (2007)).

Defendants argue that the Amended Complaint fails to adequately allege falsity and scienter and also fails to adequately allege domestic transactions. As set forth below, those arguments are without merit.[6]

### A.      Defendants' Jurisdictional Arguments are Without Merit

Defendants argue that the Amended Complaint does not adequately allege a domestic transaction under *Morrison v. Nat'l Australia Bank Ltd*, 561 U.S. 247, 267 (2010). Def. Mem. at 23-24. While Plaintiffs concur that the OTCQX does not constitute a domestic exchange, Plaintiffs can satisfy the second prong of *Morrison* given that Lead Plaintiff's purchases of Curaleaf securities were domestic transactions.

Section 10(b) applies to both transactions in securities listed on domestic exchanges, and domestic transactions in other securities. *Id*. The Second Circuit has held that "a securities transaction is domestic when the parties incur irrevocable liability to carry out the transaction within the United States or when title is passed within the United States." *Absolute Activist Master Fund LLC v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012); *see also Giunta v. Dingman*, 893 F.3d 73, 79-80 (2d Cir. 2018) (stating the a "domestic transaction" means the purchaser "incurred irrevocable liability within the United States to take and pay for a security" or the seller "incurred irrevocable liability within the United States to deliver a security."). In other words, when a security is not listed on a domestic exchange, "[i]t is the 'location of the

---

[6] Defendants do not argue that the Amended Complaint fails to adequately allege a connection between the misrepresentation or omission and the purchase or sale of a security, reliance, economic loss or loss causation. Those arguments are, consequently, waived. *See Myun-Uk-Choi v. Tower Research Capital LLC*, 890 F.3d 60, 69 n. 5 (2d Cir. 2018).

transaction that establishes (or reflects the presumption of) the [Securities Exchange] Act's inapplicability." *United States v. Georgiou*, 777 F.3d 125, 135 (3d Cir. 2015) (alternation in original (quoting *Morrison*, 561 U.S. at 268)).

Defendants argue that the Amended Complaint offers no way to conclude that the underlying transactions were "domestic transactions" under the operative definition. Def. Mem. at 24. Lead Plaintiff Basch's declaration, filed herewith, establishes that he did, in fact, purchase his shares of Curaleaf from a U.S.-based market maker. *See* Declaration of Warren Basch at 1.[7] Specifically, on May 3, 2019 and May 14, 2019, Basch purchased Curaleaf stock from G1X (G1 Execution Services, LLC), located at 175 W. Jackson Blvd., Suite 1700, Chicago, IL 60604. *Id*. at Ex. A (stating that Basch's Curaleaf stock purchases were "routed to market maker G1X"). Accordingly, Basch's purchases through G1X are "domestic transactions" as they "required the involvement of a purchaser or seller working with a market maker and committing to a transaction in the United States, incurring irrevocable liability in the United States, or passing title in the United States." *Georgiou*, 777 F.3d at 136-37; s*ee also Alpha Capital Anstalt v. New Generation Biofuels, Inc.*, No. 13-CV-5586 (VEC), 2014 U.S. Dist. LEXIS 161472, at *41 (S.D.N.Y. Nov. 18, 2014) (finding a "domestic transaction" when plaintiff "incurred irrevocable liability to issue and deliver the securities sold to Plaintiff . . . within the borders of the United States.").[8]

---

[7] Plaintiffs request that the Court accept the Declaration of Warren Basch filed herewith to address the ancillary jurisdictional question raised by Defendants. *Cf. DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (noting a plaintiff need only make a *prima facie* showing of personal jurisdiction through pleadings and affidavits at the motion to dismiss).

[8] The Defendants also argue that it was "not possible" for anyone to purchase Curaleaf shares on the OTCQX before February 19, 2019. Def. Mem. at 7, n. 4. But such fact-based arguments concerning the scope of the class period are premature and can be addressed at the class certification stage.

**B.      The Amended Complaint Adequately Alleges False and Misleading Statements or Omissions of Material Fact**

Statements of material fact are actionable in the securities fraud context if they are either false or misleading. *See Matrixx Initiatives, Inc.,* 563 U.S. at 36. "The law is well settled ... that so-called half-truths—literally true statements that create a materially misleading impression— will support claims for securities fraud." *S.E.C. v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011), *rev'd on other grounds*, *Gabelli v. S.E.C.*, 568 U.S. 442 (2013). *See also S.E.C. v. StratoComm Corp.*, 652 Fed. App'x 35, 37 (2d Cir. 2016) ("untrue assertions, ambiguous statements, and half-truths can render a statement misleading"). An omission is actionable when disclosure is "necessary ... to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b).

The Amended Complaint alleges that the Defendants: (i) failed to disclose that Curaleaf's CBD-based products were ***illegal*** under federal law (as opposed to simply "unregulated" or "unapproved" or subject to a potential regulation at some point in the future); and (ii) represented that Curaleaf's CBD-based products were beneficial for human and animal health and could treat medical conditions when, according to the FDA, those representations were "not only a violation of the law, but also [could] put patients at risk, as these products ***have not been proven to be safe or effective***." Amended Complaint at ¶ 40. The Amended Complaint makes clear why each of these statements or omissions was false and misleading.

**1.      Defendants' False And Misleading Statements and Omissions**

Contrary to Defendants' assertions, Curaleaf did not "publicly acknowledge[] the very information that plaintiff contend it concealed." Def. Mem at 13-14 (citing *In re KeySpan Corp.*, 383 F. Supp. 2d 358, 379 (E.D.N.Y. 2003)). Indeed, the Defendants ***concede*** that they made ***no mention*** of the FDA or FDA approval (or lack thereof) in either of the most critical press

11

releases at issue in this case: Curaleaf's November 21, 2018 press release announcing its new "Curaleaf Hemp" line of CBD products or the May 10, 2019 press release announcing the new Bido line of CBD products for pets. Def. Mem. at 9-10. The Defendants did not reference the FDA *at all* in either of those press releases, and consequently did not disclose that Curaleaf's CBD-based products were not approved by the FDA and were consequently *illegal* under federal law when those announcements were made. Indeed, without approval for a specific use, the FDA was unequivocal that the marketing of CBD products as a dietary supplement was *illegal*. Amended Complaint at ¶ 43. But without disclosure in the relevant press releases, investors were left with the false and misleading impression that the products were both legal and beneficial. *See Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 181-82 (S.D.N.Y. 2010) ("[M]aterial misrepresentations include those concerning a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability." (alteration, citation, and internal quotation marks omitted)); *id.* (finding statements material because they misled investors about "the fundamental nature of its most important business segment"). *See also In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549 ("Whether [the omitted fact] constitutes material information, and whether nondisclosure of the [omitted fact] renders the original disclosure misleading, remain questions for the trier of fact, and may be resolved by summary judgment when there is no disputed issue of material fact."); *In re Iso Ray Sec. Litig.*, 189 F. Supp. 3d 1057, 1064 (E.D. Wash. 2016) (failure to explicitly include information left investors with mistaken view of press release).[9]

---

[9] Defendants' authorities are inapposite, because in those cases the defendant companies provided investors with the sought after disclosures. *See, e.g., Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 247-50 (E.D.N.Y. 2019) (investors were provided list of mutual fund's

Defendants ignore these facts and rely on *other* regulatory filings that were not cited in any fashion in the November 2018 and May 2019 announcements that merely paint a portrait of an uncertain regulatory landscape at best. But those other documents merely disclosed that the "[FDA] *could potentially* take regulatory action against unapproved cannabis-derived products, and that [the FDA] had not yet decided whether and how to approve them." Def. Mem. at 18. *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734-35 (7th Cir. 2004) (holding statements misleading where disclosures "remained fixed even as the risks changed"). But in fact, the FDA website explains:

> "Can THC or CBD products be sold as dietary supplements? A. *No.* Based on available evidence, FDA has concluded that THC and CBD products are excluded from the dietary supplement definition under section 201(ff)(3)(B) of the FD&C Act [21 U.S.C. § 321(ff)(3)(B)]."

Amended Complaint at ¶ 42 (emphasis added). In short, even if the Company's "disclosures" made outside of the relevant press releases are considered – Rule 12(d) notwithstanding – this is not a scenario where the Defendants sought FDA approval for their product and cautioned that the FDA might not grant approval, and then the FDA did not grant approval. *See, e.g., In re Delcath Sys. Sec. Litig.*, 36 F. Supp. 3d 320, 333-334 (S.D.N.Y. 2014) (forward looking statements about possible FDA approval of medical device system found to be non-actionable due to, among other things, risk of not obtaining FDA approval being specifically disclosed). Rather, Defendants ignored the FDA's unambiguous guidance and instead cautioned that the Company *might* be subject to regulation or that the regulatory environment might shift and let investors bear the undisclosed risk of Curaleaf illegally selling CBD health products.

---

investments every quarter and thus found to have knowledge of mutual fund's investment in certain risky options).)

At best, Defendants merely disclosed a possible shift in the regulatory environment that could cause trouble for the Company. *See, e.g.,* "There is no guarantee that state laws legalizing and regulating the sale and use of cannabis will not be repealed or overturned, or that local governmental authorities will not limit the applicability of state laws within their respective jurisdictions." Amended Complaint at ¶ 58. While a shifting regulatory environment was one of the many general risks facing the Company, Curaleaf actively misled investors into believing that its products were legal. *In re Harman Intern. Indus., Inc. Sec. Litig.*, 791 F.3d 90, 104-05 (D.C. Cir. 2015) (reversing dismissal, holding that general warning of product obsolescence that omitted historical facts that could have affected the analysis was misleading).

### 2.    Defendants' Statements and Omissions Concerning The Health Benefits of its Products were False and Misleading

Defendants also made repeated false and misleading statements representing that Curaleaf's CBD-based products were beneficial for human and animal health and could treat medical conditions. But in reality, those claims were false because, according to the FDA, they were "not only a violation of the law, but also [could] put patients at risk, as these products ***have not been proven to be safe or effective***." Amended Complaint at ¶ 40. Once Curaleaf spoke about the medical benefits of its products, the Company had a duty to fully inform investors that its products were not approved for medicinal use. *See, e.g., Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014) ("Even when there is no existing independent duty to disclose information, once a company speaks on an issue or topic, there is a duty to tell the whole truth.").

Plaintiffs have highlighted instances where Defendants made specific claims about Curaleaf's CBD-based products and failed to follow these claims with the necessary information ***about these products*** to correct these claims. For example, Curaleaf's CBD pet products were sold on its website and advertised as: (a) decreasing compulsive behavior and separation anxiety

14

in dogs; (b) being "natural and safe"; (c) effective for treating arthritis and joint issues in dogs; (d) effective for treating osteoarthritis in dogs potentially for cats; and (e) relieving cancer pain and potentially slowing the growth of cancer in animals.  Amended Complaint at ¶ 88.  As later revealed by the FDA, contrary to Curaleaf's representations, these products "are not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling." Amended Complaint at ¶ 96; July 22, 2019 FDA Letter at 7-8.

Similarly, Curaleaf advertised its CBD products as follows: (a) suitable for treating anxiety, depression, PTSD and chronic pain; (b) an "effective treatment" for Parkinson's disease and Alzheimer's disease; (c) able to reduce opioid-related withdrawal and the buildup of tolerance; (d) able to counteract the growth and spread of cancer and kill breast cancer cells; and (e) able to deter heart disease.  Amended Complaint at ¶ 66. As later revealed by the FDA, certain Curaleaf "products are not generally recognized as safe and effective for the above referenced uses and, therefore, the products are "new drugs" under section 201(p) of the FD&C Act, 21 U.S.C. 321(p).  New drugs may not be legally introduced or delivered for introduction into interstate commerce without prior approval from the FDA . . ." July 22, 2019 FDA Letter at 5.

In conjunction with these advertisements, numerous Curaleaf public statements noted that its products "supported overall wellness" Amended Complaint ¶¶ 65, 92, 94.  Notably absent from Defendants' briefing is any assertion that these statements were supportable.[10]

---

[10] Defendants' throwaway assertion that some their various unidentified statements could be puffery should be disregarded.  *See* Def Mem. at 20.  Plaintiffs identified distinct instances where

15

Defendants attempt to sidestep the misleading representations about the beneficial health aspects of its products for human and pet consumption by noting that it had no disclosure duty "where the Company's statements conveyed no information about FDA approval or about whether the products met the FDA's standards. . ." Def Mem. at 19 (quotations omitted). Defendants rely on inapposite cases involving pharmaceutical companies where courts have recognized that disclosure of every FDA discussion is unnecessary as "[c]ontinuous dialogue between the FDA and the proponent of a new drug is the essence of the product license application process." *Tongue v. Sanofi*, 816 F.3d 199, 211 (2d Cir. 2016) (quotations omitted). Each cited case has no bearing on the facts before the Court here. *See, e.g., Id.* at 212 (allegations that the company failed to state the FDA noted a preference for a double-blind test, yet the company continued with a single-blind test for its pharmaceutical drug); *Gregory v. ProNAi Therapeutics, Inc.*, 297 F. Supp. 3d 372, 401 (S.D.N.Y. 2018) (noting there is no duty to disclose to efficacy of a pharmaceutical drug during a Phase 1 trial, which measures safety and not efficacy); *In re Guidant Corp. Sec. Litig.*, No. 1:03-CV-0892-SEC-WTL, 2004 U.S. Dist. LEXIS 22809, at *47-49 (S.D. Ind. Nov. 8, 2004) (noting there was no duty to disclose a company's failure to comply with FDA regulations and disclose the marketing of unapproved uses of a medical device in press releases solely concerning the results of clinical studies of the medical device). In sum, each of Defendants' citations from the inapposite pharmaceutical context merely asserts the uncontroversial conclusion that during the announcement of a

---

the Company states that its products were of medicinal quality, yet had received no such approval from the FDA and were thus illegal. These affirmative statements were not vague statements of corporate optimism such as "maintain[ing] the magic" that constitute corporate puffing. *Steamfitters' Indus. Pension Fund v. Endo Int'l PLC*, 771 Fed. App'x 494, 497 (2d Cir. 2019).

*completely unrelated event* there is no "require[d] disclosure of all facts or results of interest to Plaintiffs." *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 569 (S.D.N.Y. 2011).

Rather, *Robb v. FitBit*, 216 F. Supp. 3d 1017 (N.D. Cal. 2016) is instructive, where defendants' statements concerning the health benefits and accuracy of a product were actionable under the securities law for being misleading. *Id.* at 1024. There, defendants made statements claiming a health-benefit through the accuracy of the heart rate tracking of its product, which turned out to not be able to accurately measure customer's heart rates. *Id.* The court found the statements concerning the product were actionable under the securities laws as "plaintiffs have alleged . . . that the product itself does not do the thing that it claims to do." *Id.* at 1029. Here, Defendants have similarly made unsupported statements that its products were beneficial for "human and pet health" despite lacking any approval for such use or marketing. When the truth was revealed that Curaleaf's products did not have the health benefits touted and were unable to be marketed as such, investors were harmed, just as they were in *Robb*. Accordingly, the Court should find that "[a]t this stage, plaintiffs have sufficiently alleged a material misrepresentation or omission by the defendant." *Id.* at 1029-30.

### 3.      Defendants' "Truth-On-The-Market" Defense Is Inapposite

Defendants argue that the material information that Curaleaf omitted from its public statements was already in the "public domain" and, consequently, Curaleaf did not need to provide such information to its shareholders. Def. Mem. at 17-18. But Defendants' attempt to interject additional facts into the Amended Complaint at this stage is improper and should be rejected.[11] As the Second Circuit has noted, "[t]he truth-on-the-market defense is intensely fact-

---

[11] *See* Letter Motion to Strike Extraneous Documents dated June 4, 2020 and filed contemporaneously herewith.

specific and is rarely an appropriate basis for dismissing a § 10(b) complaint for failure to plead materiality." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000).  This is because Defendants bear the burden to prove that "the corrective information [was] conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements."  *Id.* (citations omitted).  Ignoring the impropriety of submitting information outside the complaint for a motion to dismiss, Defendants fail to meet their heavy burden with the submission of various articles, which discuss the cannabis industry generally and none of which concern Curaleaf or the specific allegations of the Amended Complaint, *i.e.*, that Curaleaf's CBD-based products were ***illegal*** under federal law and that its CBD-based products were ***not*** beneficial for human and animal health and improper for the treatment of medical conditions.  Defendants' submissions, to the extent the Court considers them, cannot cure these Company specific omissions.

Defendants' extraneous citations to general information about the cannabis market and FDA press releases have no bearing on the specific misleading statements and omissions set forth in the Amended Complaint.  (Def. Exhibits B, D, I, & J)[12]  Indeed, Defendants rely on inapposite authorities concerning instances where ***company specific*** information was widely disseminated to the market and addressed the allegations of the complaint.  For example, *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 564 (S.D.N.Y. 2013), the ***company specific*** risk of suit which was alleged to be omitted from the company's disclosures was widely publicly discussed as acknowledged in the allegations of the complaint.  *Id.* at 574, 576.  Importantly, the

---

[12] "Def. Exhibit" refers to the exhibits attached to the Declaration of Stephen L. Ascher (ECF Nos. 42-2 through 42-16).  Moreover, to the extent Defendants seek to impute the information in the Cowen Equity Research reports to the public domain, these reports are intended for clients only and not distributed publicly.  *See, e.g.,* Def. Exhibit F at 61; Def. Exhibit G at 101.

court found that, "the plaintiffs' Second Amended Complaint is replete with references to BoA's publicly disclosed exposure to MBS litigation." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. at 578.[13]   Similarly in *In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358 (E.D.N.Y 2003) the company specific information was in the public record as the company *itself* made the disclosures in its public filings that addressed the alleged omissions. *Id.* at 378 ("In the view of the court, the disclosures in defendant's March 10 Form 10-K alone defeat nearly all of plaintiffs' claims relating to the effects of the Company's status under PUHCA.").   Here, Plaintiffs do not allege, nor do Defendants indicate that the general public was fully aware that Curaleaf's CBD-based products were illegal under federal law or that its CBD-based products were not beneficial for human and animal health and improper for the treatment of medical conditions.

Moreover, Defendants ignore the Second Circuit's rejection of Defendants' "'sweeping proposition that an issuer of securities is never required to disclose publicly available information.'" *N.J. Carpenters Health Fund v. Royal Bank of Scot. Gp., PLC*, 709 F.3d 109, 127 (2d Cir. 2013) (quoting *Litwin v. Blackstone Gp., L.P.*, 634 F.3d 706, 718 (2d Cir. 2011)).[14] Rather Defendants rely on inapposite authorities that are merely the exceptions to the Second Circuit's general holding that "'sporadic news reports . . . should not be considered part of the

---

[13] Likewise, *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 255 (S.D.N.Y. 2019), in part concerned allegations that a prospectus omitted information concerning a foreign market. There, the court noted that this "information about which was published in several articles *cited by Plaintiffs in the SAC*, was not information uniquely within Defendants' control and thus Defendants had no duty to disclose such information." The court further noted that the information was disclosed in the prospectus and was merely "contextual," not material. *Id.*

[14] Defendants cherry-pick language from the factually inapposite *Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*, 412 F.3d 103, 106 & 109-110 (2d Cir. 2005), which concerned the tendering of shares after a merger where shareholders disregarded information regarding fees for the tendering of their shares contained in multiple *personally addressed notices* mailed to the shareholders. *Starr* does not concern publicly available information in any form.

total mix of information that would clarify or place in proper context . . . representations' that were contained in materials that the company provided 'directly.'" *N.J. Carpenters Health Fund*, 709 F.3d at 127 (quoting *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993)).  Indeed, "'[t]here are serious limitations on a corporation's ability to charge its stockholders with knowledge of information omitted from a document such as a . . . prospectus on the basis that the information is public knowledge and otherwise available to them.'" *Id.* (quoting *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 736 (2d Cir. 1987)).[15]

Plaintiffs' allegations are not merely that Defendants' statements lacked context or needed clarification such that the public markets might be able to cure these deficiencies. Rather, Plaintiffs allege that Curaleaf omitted that its CBD-based products were illegal under federal law and that its CBD-based products were not beneficial for human and animal health and improper for the treatment of medical conditions.  Indeed, Defendants' reliance on these extraneous documents that were not issued by Defendants only highlights that Defendants own publicly issued statements did not include the requisite material information.[16]

## IV.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES SCIENTER

In evaluating scienter, "[t]he inquiry is…whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation,

---

[15] An inquiry as to the total mix of information is highly fact specific and typically reserved for summary judgment, not the motion to dismiss.  *See, e.g, In re Andrx Corp.*, 296 F. Supp. 2d 1356, 1364 (S.D. Fla. 2003) (applying truth on the market defense at summary judgment); *Beleson v. Schwartz*, 419 Fed. App'x 38, 41 (2d Cir. 2011) (affirming dismissal after summary judgment due to, among other things, the total mix of information.).

[16] Defendants' argument that "reasonable investors would have been aware of the FDA's own, persistent statements that it could potentially take regulatory action against unapproved cannabis-derived products, and that it had not yet decided whether and how to approve them" (Def. Mem. at 18) cannot possibly be squared with Defendants' later argument that "Defendants were simply confused by the regulatory scheme" (Def. Mem. at 23) in support of the motion to dismiss based on scienter grounds.

scrutinized in isolation, meets that standard." *Tellabs*, *Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007) (emphasis in original). A plaintiff may establish scienter by alleging facts showing that defendants "(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc*., 531 F.3d 190, 194 (2d Cir. 2008); *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000); *In re Pall Corp*., No. 07-CV-3359 (JS)(ARL), 2009 WL 3111777, at *6 (E.D.N.Y. Sept. 21, 2009).  The inference of scienter need not be more likely than any plausible opposing inference; a tie goes to the plaintiff. *Tellabs*, 551 U.S. at 324.  Moreover, "[a]n egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness." *Novak*, 216 F.3d at 308 (citations omitted); *see also In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig*., No. 09 MD 02058, 2011 WL 3211472, at *9 (S.D.N.Y. July 29, 2011) (same).

The Defendants simply argue, in *ipse dixit* fashion, that they were "justified in believing that the Company's own express disclosures of the risk of FDA regulation were more than sufficient to make investors aware of the relevant information." Def. Mem. at 22.  But, as set forth above, the Amended Complaint does not allege issues with respect to the mere disclosure of a "risk of FDA regulation."  Rather, the Amended Complaint alleges that the Defendants failed to disclose that the CBD products offered for sale were ***illegal*** and that the health representations were without any basis.  And in accordance with the relevant standard, the Amended Complaint alleges ample evidence establishing a strong inference that Defendants knew or recklessly disregarded these facts.

21

Specifically, the Amended Complaint establishes scienter in alleging that: (1) on the federal level, CBD products, other than one previously approved product, were illegal, and Defendant Lusardi was well aware of the relevant law (Amended Complaint at ¶¶ 54; 120); (2) there was conflicting and evolving law and regulations between state and federal entities, making accurate disclosure all the more important; (3) CBD products were Curaleaf's core business operation[17]; (4) Curaleaf paid little attention to regulatory compliance and belatedly appointed a "new head of compliance" only *after* the FDA warning letter was delivered;[18] (5) Curaleaf was simply so focused on expansion within the U.S., at all costs, conceding that it sought expansion "through aggressive organic growth" and would seek to open "approximately one new retail location per week and will be aggressively opening new stores through 2019 and beyond." Amended Complaint at ¶ 120; and finally (6) Defendant Davidson admitted that Curaleaf had taken regulatory risks with its CBD products in order to prioritize expansion in the earnings call on August 27, 2019, when he stated "the successful companies in fact, are companies that do

---

[17] Allegations concerning a company's core operations may also give rise to a strong inference of scienter. Under the core operations theory, "if a plaintiff can plead that a defendant made false or misleading statements when contradictory facts of critical importance to the company either were apparent, or should have been apparent, an inference arises that high-level officers and directors had knowledge of those facts by virtue of their positions with the company." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)). The core operations inference "may be considered 'as part of [a court's] holistic assessment of the scienter allegations.'" *Shemian v. Research In Motion Ltd.*, No. 11 Civ. 4068, 2013 WL 1285779, at *18 (S.D.N.Y. Mar. 29, 2013) (quoting *Bd. of Trs. of Ft. Lauderdale Gen. Emps'. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 872 (S.D.N.Y. 2011)); *accord Cortina v. Anavex Life Sciences Corp.*, No. 15-cv-10162 (JMF), 2016 WL 7480415, at *7 (S.D.N.Y. Dec. 29, 2016). *In re Rockwell Med., Inc. Sec. Litig.*, No. 16 Civ 1691 (RJS), 2018 WL 1725553, at *15 (S.D.N.Y. Mar. 30, 2018).

[18] Prior to August 2019, Curaleaf did not employ a head of compliance, despite its acknowledged confusion about the cannabis regulatory regime.

take risks. Those that don't take risk never make it to the finish line. Those that do take risk make it."  Amended Complaint at ¶¶ 106; 120.

These allegations are sufficient to support a strong inference of scienter.  *See In re Refco, Inc Sec. Litig.*, 503 F. Supp. 2d 611, 649 (S.D.N.Y. 2007) ("[S]cienter may be found where there are 'specific allegations of various reasonably available facts, or 'red flags,' that should have put the officers on notice' that the public statements were false."); *Dynex*, 531 F.3d at 195;  *In re Atlas*, 324 F. Supp. 2d at 489 ("[W]hen contradictory facts of critical importance to the company either were apparent, or should have been apparent, an inference arises that high-level officers and directors had knowledge of those facts by virtue of their positions with the company." *In re Vale S.A. Sec. Litig.*, No. 19 CV 526 (RJD) (SJB), 2020 U.S. Dist. LEXIS 91150, at *46 (E.D.N.Y. May 20, 2020) (scienter adequately alleged where there were "reasonably available facts, or red flags, that should have put the officers on notice that the public statements were false.'") (quoting *Refco*, 503 F. Supp. 2d at 649).  Indeed, a complaint adequately alleges scienter when alleging the existence of circumstantial evidence that the information reached or was accessible to defendants.  *See In re Barrick Gold Sec. Litig.*, No. 13 CIV. 3851 SAS, 2015 WL 1514597, at *11 (S.D.N.Y. Apr. 1, 2015) (allegations sufficient where "defendants had access to information in the form of monthly progress reports and statements from the Project Manager"); *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 300-01 (S.D.N.Y. 2018) (allegations sufficient where specific reports were circulated and individual defendants attended meetings in which problems were discussed); *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 468

23

(S.D.N.Y. 2017) (internal audit report circulated to CEO and board of directors supported strong inference of scienter).[19]

Here, Defendants' press releases concerning Curaleaf's CBD-based products disclosed *nothing* about the FDA and, consequently, presented a danger that investors would believe that the products were legal and effective.   In short, the Amended Complaint adequately alleges scienter.

## V.     THE AMENDED COMPLAINT ADEQUATELY ALLEGES CONTROL PERSON LIABILITY UNDER SECTION 20(A)

"In the Second Circuit, the 'control person' provisions are broadly construed as they were meant to expand the scope of liability under the securities laws." *CompuDyne v. Shane*, 453 F. Supp. 2d 807, 829 (S.D.N.Y. 2006) (quotation and citation omitted). "In order to establish a *prima facie* case of liability under § 20(a), a plaintiff must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation." *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 550 (S.D.N.Y. 2007) (citation omitted). The Amended Complaint satisfies each of these requirements.

Defendants assert that Plaintiffs cannot adequately alleged control person liability because they have not adequately alleged a primary violation of the Exchange Act. Def. Mem. at 24.   As demonstrated above, however, Plaintiffs adequately alleged a Section 10(b) claim.

---

[19] Defendants' cited cases are inapposite.   For example, the complaint need not allege the withholding of non-public information.  *See In re Avon Sec. Litig.*, No. 19 Civ. 01420 (CM), 2019 WL 6115349, at *19-20 (S.D.N.Y. Nov. 18, 2019) (no need to identify specific internal documents supporting fraud).  Defendants also cite *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 510 (E.D. Pa. 2018), where the allegedly omitted information "would have been obvious" to Defendants.  But Defendants' argument is undermined by their contemporaneous argument that they were "simply confused by the regulatory scheme."  Def. Mem. at 23.

Therefore, "the 'primary violation' element of section 20(a) is satisfied." *380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 231 (S.D.N.Y. 2008). Defendants do not assert that the Amended Complaint fails to allege control, thus conceding the second requirement for control person liability.

## VI.    LEAVE TO AMEND SHOULD BE FREELY GRANTED

The Defendants argue that the Plaintiffs should not be granted leave to amend if the motion to dismiss is granted.  Def. Mem. at 25.  But, as Defendants concede, this action was commenced by a different plaintiff, and Plaintiffs have not had any opportunity to plead with greater specificity to date.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) ("District courts typically grant plaintiffs *at least* one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)").  Consequently, should the Court dismiss the complaint, Plaintiffs respectfully request leave to replead.

## VII.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss in its entirety.  If the Amended Complaint is dismissed, Plaintiffs respectfully submit that the dismissal should be without prejudice.

Dated: June 4, 2020                                   Respectfully submitted,

> **WOLF HALDENSTEIN ADLER**
> **FREEMAN & HERZ LLP**
> Matthew M. Guiney, Esq.
> Kevin G. Cooper, Esq.
> 270 Madison Avenue
> New York, NY 10016
> Tel: (212) 545-4600
> guiney@whafh.com
> kcooper@whafh.com
>
> *Lead Counsel for Plaintiffs and the Class*

-and-

**LEVI & KORSINSKY, LLP**

Nicholas I. Porritt, Esq.
Adam M. Apton, Esq.
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
nporritt@zlk.com
aapton@zlk.com

*Counsel for W. Frank Klun and Laura Klun
and Additional Counsel for the Class*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of June 2020, a true and correct copy of the foregoing

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

PLAINTIFF'S AMENDED SECURITIES CLASS ACTION COMPLAINT was served by

CM/ECF to the parties registered to the Court's CM/ECF system.


                                        /s/ Matthew M. Guiney

                                        Matthew M. Guiney