**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

In re CURALEAF HOLDINGS, INC.
SECURITIES LITIGATION

Case No. 1:19-cv-04486-BMC

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE AMENDED**
**CLASS ACTION COMPLAINT**

Stephen L. Ascher
Andrew J. Lichtman
Jeremy H. Ershow
Allison N. Douglis
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022-3908
Phone: 212-891-1600
Fax: 212-891-1699
sascher@jenner.com
alichtman@jenner.com
jershow@jenner.com
adouglis@jenner.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**CONTENTS**

I.    There Were No False Or Misleading Statements Or Omissions Of Material Fact..............1

    A.    The Company's Press Releases Could Not Have Misled Investors Because The Company Had Already Fully Disclosed These Risks In Its Securities Filings. ........................................................................................................1

    B.    The Risk Of Federal Regulation Was Well-Known To Investors. .........................4

    C.    The Company's Promotional Statements Were Neither False Nor Actionable. ...............................................................................................6

II.    Plaintiffs Have Not Come Close To Adequately Pleading Scienter...................................8

III.    The Amended Complaint Does Not Allege A "Domestic Transaction." .........................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012)..................................................................................................10

*Abuhamdan v. Blyth, Inc.*,
9 F. Supp. 3d 175 (D. Conn. 2014) ........................................................................................2

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014).............................................................................................4, 10

*Enzo Biochem, Inc. v. Amersham PLC*,
981 F. Supp. 2d 217 (S.D.N.Y. 2013)................................................................................6, 10

*Fila v. Pingtan Marine Enter. Ltd.*,
195 F. Supp. 3d 489 (S.D.N.Y. 2016)....................................................................................8

*Freudenberg v. E\*TRADE Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010).....................................................................................8

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016)....................................................................................10

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013)..................................................................................4, 5

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
2011 WL 3211472 (S.D.N.Y. July 29, 2011) .........................................................................9

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
2012 WL 1353523 (S.D.N.Y. Apr. 12, 2012).........................................................................5

*In re Carter-Wallace, Inc. Sec. Litig.*,
150 F.3d 153 (2d Cir. 1998)..................................................................................................8

*In re Hardinge, Inc. Sec. Litig.*,
696 F. Supp. 2d 309 (W.D.N.Y. 2010) ...................................................................................3

*In re Iso Ray, Inc. Sec. Litig.*,
189 F. Supp. 3d 1057 (E.D. Wash. 2016)...............................................................................5

*In re: LifeLock, Inc. Sec. Litig.*,
690 F. App'x 947 (9th Cir. 2017) ...........................................................................................8

*In re Pall Corp.*,
  2009 WL 3111777 (E.D.N.Y. Sept. 21, 2009) ............................................................9

*In re PetroChina Co. Ltd. Sec. Litig.*,
  120 F. Supp. 3d 340 (S.D.N.Y. 2015)......................................................................7

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015)........................................................................2

*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008)......................................................................7

*In re UBS Auction Rate Sec. Litig.*,
  2010 WL 2541166 (S.D.N.Y. June 10, 2010) .......................................................2, 5

*Janbay v. Canadian Solar, Inc.*,
  2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ..........................................................7

*Kauffman v. Natural Health Trends Corp.*,
  2019 WL 7165921 (C.D. Cal. Dec. 20, 2019) ..........................................................4

*Morrison v. National Australia Bank Ltd.*,
  561 U.S. 247 (2010)............................................................................................10

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp.*,
  709 F.3d 109 (2d Cir. 2013)..................................................................................5

*Noble Asset Mgmt. v. Allos Therapeutics, Inc.*,
  2005 WL 4161977 (D. Colo. Oct. 20, 2005) ..........................................................5

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)..................................................................................9

*Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*,
  898 F. Supp. 2d 673 (S.D.N.Y. 2012)......................................................................7

*Robb v. FitBit*,
  216 F. Supp. 3d 1017 (N.D. Cal. 2016) ..................................................................8

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008)...............................................................................4, 5

The Court should reject Plaintiffs' various attempts to avoid the conclusive impact of the Company's[1] securities filings, which disclosed that its products were illegal under federal law, were not approved by the FDA, and were subject to the risk of FDA enforcement.  Plaintiffs bizarrely label these disclosures "vague" or "irrelevant," but in fact they disclosed the precise risk Plaintiffs allege should have been included in the Company's promotional press releases. Plaintiffs also try to denigrate these risk disclosures by labelling them less "critical" than certain press releases, but the law is precisely to the contrary:  If a company adequately discloses a risk in its securities filings, it need not repeat that disclosure every time it communicates with the public.

Nor can Plaintiffs avoid the copious public statements by the FDA itself.  Plaintiffs argue that the Court cannot consider evidence in the public domain, but that evidence is admissible for the limited purpose of considering whether the risks at issue were already known to investors.

As an alternative strategy, Plaintiffs try to change the subject and repackage their allegations into a claim that the Company falsely advertised that its products were beneficial to consumers.  But that theory is not pleaded in the Amended Complaint, and has nothing to do with the alleged corrective disclosure here.  The Court should reject Plaintiffs' attempt to amend their complaint in a responsive brief, and the Amended Complaint should be dismissed with prejudice.

**I.      There Were No False Or Misleading Statements Or Omissions Of Material Fact.**

**A.      The Company's Press Releases Could Not Have Misled Investors Because The Company Had Already Fully Disclosed These Risks In Its Securities Filings.**

Plaintiffs repeatedly try to minimize the Company's explicit disclosures about the lack of FDA approval and risk of FDA enforcement, but all their arguments misrepresent the substance or

---

[1] For the purposes of this brief, Defendants use the same defined terms as in their Opening Brief ("MTD"), ECF No. 42-1.

1

legal effect either of those risk disclosures or of the allegedly fraudulent press releases.  Plaintiffs first deem the disclosures in these securities filings less important to investors than "critical press releases," Plaintiffs' Opp. Br. ("Opp."), ECF No. 46, at 2, 5,[2] but Plaintiffs do not explain how those press releases could possibly override the detailed securities disclosures readily available to investors on SEDAR and the OTCQX website.  In fact, the law is clear that a complaint should be dismissed when the alleged omissions were covered adequately in other disclosures.  *See* MTD at 13–15; *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 547 (S.D.N.Y. 2015) (synopses of drug's safety profile not misleading in light of other disclosures); *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 195–200 (D. Conn. 2014) (press releases could not have deceived shareholders when securities filings disclosed "the very feature . . . the Complaint suggests was concealed from investors").

This principle applies with particular force where the facts were included in *the* key disclosure document for investors.  *See In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *22–23 (S.D.N.Y. June 10, 2010) (rejecting manipulative-acts claim because defendants' prospectuses fully disclosed the relevant risks, and were significant investment documents easily accessible to investors).  Thus, the Court should reject Plaintiffs' implicit contention that Curaleaf needed to repeat these disclosures in every press release concerning its CBD business.  *See Sanofi*, 87 F. Supp. 3d at 547 ("[A] reasonable investor would not expect repetition at every opportunity").

In another effort to overcome the Company's risk disclosures, Plaintiffs contend that the press releases contradicted them by "actively misle[ading] investors into believing that [the Company's] products were legal."  Opp. at 14.  That is a baldly inaccurate description of the

---

[2] Plaintiffs appear to have abandoned their reliance on forty other allegedly fraudulent statements, which in some instances did not even address the Company's CBD products.  *See* Opp. at 4-7; MTD at 10.

challenged press releases, which said nothing at all about FDA approval or regulation.[3]  As a result, no investor would have been misled by the press releases.  *See* MTD at 19–20; *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153–54 (2d Cir. 2013) (rejecting claim where "none of what was omitted was necessary to make [the] press release not misleading").[4]

Plaintiffs also try to minimize the Company's key disclosures as "boilerplate" and "vague, circumscribed or irrelevant."  Opp. at 5; *see id.* at 13.[5]  But the Listing Statement and April 2019 MD&A did more than "merely disclose[] that cannabis is illegal under federal law."  *Id.* at 5. Instead, they disclosed that Curaleaf's products were not FDA-approved, that "[a]ccordingly, the FDA may regard any promotion of the cannabis-based products as the promotion of an unapproved drug in violation of the [FDCA]," that the FDA had *already* issued warning letters to other companies marketing CBD-based products, and that similar enforcement against the Company could result in significant consequences.  AC ¶¶ 60, 83; MTD at 4–5, 8–9, 15.  Since those were precisely the risks that ultimately materialized, the disclosures were hardly vague or irrelevant.

Similarly, Plaintiffs try to minimize the disclosures by describing them as disclosing a "possible shift in the regulatory environment," *see* Opp. at 14, but that too is plainly inaccurate; the Listing Statement candidly disclosed the regulatory landscape as it was and the risks as they were.  The Company was not required to predict with certainty that the FDA would take regulatory

---

[3] For that reason, the Amended Complaint pleads a pure omissions theory.  *See* AC ¶¶ 2, 4, 46, 91–92, 95 (alleging that the lack of disclosure of FDA non-approval made Defendants' statements misleading); *see also* AC Ex. B (ECF No. 40-2) (alleging that each challenged statement was fraudulent because it did not disclose lack of FDA approval).

[4] *See also In re Hardinge, Inc. Sec. Litig.*, 696 F. Supp. 2d 309, 322 (W.D.N.Y. 2010) (same).

[5] Plaintiffs suggest the Listing Statement distinguished between cannabis and CBD for purposes of legality, *see* Opp. at 6 (citing Listing Statement, ECF No. 42-3, at 90), but the quoted passage related only to medical research.  Likewise, the statement by Lusardi quoted by Plaintiffs neither stated nor implied regulatory approval.  *See id.* (citing AC ¶ 70).

action; disclosing the risks was enough.[6]  Nor can Plaintiffs rely on the principle that a company's disclosures are insufficient if they warned investors of a risk without disclosing that the risk had already materialized.  *See* Opp. at 14.  Here, there is no dispute that the risk materialized only later.

Last, Plaintiffs criticize the November 2018 and January 2019 MD&As as "merely" referring back to the Listing Statement, but offer no reason why it was insufficient to continue referencing that document's on-point disclosures.[7]  To the contrary, the Company's repeated references to the risk disclosures in the Listing Statement underscored their continuing relevance. Plaintiffs' claims simply cannot survive the conclusive effect of those disclosures.

### B.    The Risk of Federal Regulation Was Well-Known To Investors.

Plaintiffs' claim also fails as a result of the extensive information in the public domain informing investors that the FDA had not approved Defendants' CBD products—or any other CBD-based product beyond Epidiolex—and that the FDA could take regulatory action against marketers of CBD products if it perceived them to be selling unapproved new drugs.

Plaintiffs argue that the Court may not consider these publicly available statements, news articles, and analyst reports, but these documents are admissible here—not for the truth of their contents, but for the fact that the statements were made.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*,

---

[6] *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (defendant adequately disclosed that involvement in then-pending legal proceedings and investigations could expose it to legal repercussions); *Kauffman v. Natural Health Trends Corp.*, 2019 WL 7165921, at *6–7 (C.D. Cal. Dec. 20, 2019) (disclosures adequately warned that "[t]here can be no assurance that we . . . are in compliance" with regulations and failure to comply "could lead to the imposition of significant penalties or claims" (emphasis omitted)); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 580 (S.D.N.Y. 2013) (issuer was not required to disclose potential lawsuit when it "could not determine that the lawsuit would in fact be filed").

[7] Plaintiffs do not demonstrate a change in circumstances that would have required the Company to change its disclosures.  *See* Opp. at 13.  By contrast, in *Asher v. Baxter International Inc.*, the issuer failed to adjust its risk analyses and financial projections to account for significant intervening events.  *See* 377 F.3d 727, 734 (7th Cir. 2004).

547 F.3d 406, 425 (2d Cir. 2008).  They are therefore appropriate to consider on a motion to dismiss in evaluating whether an alleged omission was misleading.  *See Bank of Am. AIG Disclosure*, 980 F. Supp. 2d at 570, 573; *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 2012 WL 1353523, at *8 (S.D.N.Y. Apr. 12, 2012).

Nor can Plaintiffs dismiss these as "sporadic news reports."  Opp. at 19–20.  The FDA itself made repeated statements—from June 2018 to May 2019—about how it had not approved any CBD-based products other than Epidiolex and was willing to take regulatory action against what it perceived to be the marketing of unapproved new drugs.  *See* AC ¶¶ 37–39; MTD at 3, 6–8 & Exs. B, D, I, J.  These warnings were highlighted in industry reporting.  *See* MTD at 6–8 & Exs. E, F, G, J.  Even at this stage, this public information was more than enough to put investors on notice of the threat of FDA regulation.  *See id.* at 18; *Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, 2005 WL 4161977, at *7 (D. Colo. Oct. 20, 2005) ("The defendants did not engage in fraud by failing to tell investors about the FDA's published regulatory guidelines . . . .").

Thus, this case is not like the cases cited by Plaintiffs, where Defendants relied only on "two newspaper articles," *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp.*, 709 F.3d 109, 127 (2d Cir. 2013), or a scientific study issued only *one day* before the challenged statement, *In re Iso Ray, Inc. Sec. Litig.*, 189 F. Supp. 3d 1057, 1072–73 (E.D. Wash. 2016).  The Court should also reject the suggestion, *see* Opp. at 18–19, that publicly available information is relevant only where it addressed the Company specifically.  *See UBS Auction Rate*, 2010 WL 2541166, at *15 ("[W]hat information was available to the investing public regarding the ARS market—even if not specific to Defendants . . . [is] relevant to the Court's consideration of this motion to dismiss.").

In sum, Plaintiffs cannot point to a single case where a court allowed a securities fraud claim to proceed in light of disclosures and public statements similar to those made here by the

company, the relevant regulatory agency, and related press coverage. The Company's investors made the choice to invest in a risky industry with the potential for federal regulation, including from the FDA. They may have been disappointed when the FDA in fact decided to send its warning letter—but they cannot claim they were misled about that risk.

### C.    The Company's Promotional Statements Were Neither False Nor Actionable.

Tacitly recognizing the insufficiency of their contention that the Company failed to disclose the risk of FDA regulation or enforcement, Plaintiffs belatedly attempt to repackage this as a false advertising case, arguing that the Company represented "that Curaleaf's CBD-based products were beneficial for human and animal health and could treat medical conditions," but "in reality, those claims were false." Opp. at 14–17. This new theory is inconsistent with the allegations of the Amended Complaint, and would not be actionable even if it were pleaded.

First, Plaintiffs should not be permitted to amend their complaint by offering an unpled theory in a brief. *See Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 223 (S.D.N.Y. 2013). The Amended Complaint repeatedly alleges that the Company's promotional claims were misleading, not because they falsely advertised certain health benefits, but "because Defendants failed to disclose to investors that CBD was ***not approved*** by the [FDA] and subject to regulatory rules that . . . were unclear as to exactly what products could be sold and how they could be marketed." AC ¶ 2; *see id.* ¶¶ 3–7, 67, 69, 72, 74, 76, 78, 85, 86, 88–89, 91–95. Indeed, Plaintiffs' claim hinges on the theory that "the *very fact* that [the Company's] CBD products were not approved called into question their quality and safety." *Id.* ¶ 103.[8] Although the Amended

---

[8] *See also* AC ¶¶ 2, 4, 46, 91–92, 95 & Ex. B (ECF No. 40-2) (alleging fraud based in failure to disclose lack of FDA approval).

6

Complaint alleges that it is inconclusive whether CBD products are effective for certain uses or have significant health risks, *id.* ¶¶ 4, 26–28, 39–45, 96, 98–99, it offers *no* support for the statement in Plaintiffs' brief that the Company's representations about its products "were false."[9]

Moreover, Plaintiffs' new theory is defective as a matter of law, because it cannot satisfy the causation requirement. Loss causation requires that a subsequent disclosure must "somehow reveal[] to the market that a defendant's prior statements were not entirely true or accurate." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008). Here, Plaintiffs allege that they suffered harm when the "FDA [l]etter [d]isclose[d] the [t]ruth," AC ¶¶ 96–101, 121–22, but the FDA Warning Letter said nothing to contradict any of the Company's public statements about the effects of its products. AC ¶ 6 & Ex. A (ECF No. 40-1). Thus, Plaintiffs have not alleged that Curaleaf's stock price declined because it was revealed that the Company's statements about the positive qualities of its products were false. Courts regularly dismiss securities fraud claims because of this kind of disconnect between the alleged fraud and the subsequent disclosure. *See*, *e.g.*, *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *14 (S.D.N.Y. Mar. 30, 2012) ("An alleged corrective disclosure that does not reveal the falsity of Defendants' challenged public statements cannot establish loss causation"); *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 685-86 (S.D.N.Y. 2012) ("Because the alleged 'truth' about these misstatements never was alleged to have reached the market, they could not have caused a decline in [the Company's] stock."); *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 367–68 (S.D.N.Y. 2015) (rejecting causation where disclosures did not "immediately reveal the

---

[9] The FDA's July 2019 letter does not establish falsity; it stated only that the FDA viewed the Bido product line as meeting the statutory definition of "new animal drug" because CBD is "not generally recognized, among experts qualified by scientific training and experience . . . , as safe or effective for use under the conditions prescribed, recommended, or suggested in the labeling." AC Ex. A (ECF No. 40-1), at 7–8; *see also id.* at 5 (discussing Curaleaf Hemp).

7

falsity" of alleged misrepresentations or omissions); *Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 496–97 (S.D.N.Y. 2016) (dismissing claim for lack of causation).

Plaintiffs' new theory is also defective because investors would not have relied on vague promotional statements about the Company's CBD products.  Courts have distinguished between statements like these, which are relevant at most to consumer protection claims, and specific claims concerning a product's central benefit, which are actionable under the securities laws if they would be relied upon by investors.  *Compare In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 156 (2d Cir. 1998) ("Technical advertisements in sophisticated medical journals detailing the attributes of a new drug could be highly relevant to analysts evaluating [the company's stock]") *and Robb v. FitBit*, 216 F. Supp. 3d 1017, 1029–30 (N.D. Cal. 2016) (specific claims about products' core technical capabilities were flatly contradicted by available evidence), *with In re: LifeLock, Inc. Sec. Litig.*, 690 F. App'x 947, 953–54 (9th Cir. 2017) (dismissing claim because advertisements that a company's identity theft protection "helps proactively safeguard your credit" and takes "fast action" "hardly resemble" the advertisements in *Carter-Wallace*).  Here, investors would not have relied on vague references to "wellness," "medically precise" methods, and potential health benefits in the context of two discrete product lines.  *Cf.  Freudenberg v. E\*TRADE Fin. Corp.*, 712 F. Supp. 2d 171, 181–82 (S.D.N.Y. 2010) (addressing misrepresentations directed at investors about the stability of the most important part of the defendants' business).  For all these reasons, the Court should reject Plaintiffs' new theory.

## II.      Plaintiffs Have Not Come Close To Adequately Pleading Scienter.

Plaintiffs defend their scienter allegations by recapitulating the same arguments addressed above, and those arguments should be rejected for the same reasons here.  Thus, while Plaintiffs claim that "the Amended Complaint alleges that the Defendants failed to disclose that the CBD

8

products offered for sale were illegal," Opp. at 21, in fact the disclosures in the Company's securities filings accurately disclosed the law and the risk that the FDA would bring enforcement action with respect to these products. Similarly, the Court should reject Plaintiffs' contention that they have properly alleged "that the health representations were without any basis." *Id*.

Plaintiffs next argue that Defendants knew about but recklessly disregarded the risk of federal regulation as part of an overly aggressive expansion scheme. Opp. at 22–23. The linchpin of their theory is that "defendants' press releases concerning Curaleaf's CBD-based products disclosed ***nothing*** about the FDA and, consequently, presented a danger that investors would believe that the products were legal and effective." *Id.* at 24 (emphasis in original). Again, the problem with this contention is that it focuses solely on two press releases and disregards entirely the Company's repeated risk disclosures in its securities filings, and other public information.

In addition, the allegations here lack any of the usual indicia of recklessness, such as a personal motive to defraud (*see ECA Local 134 IBEW Joint Pension Tr.*, 553 F.3d 187, 198–99 (2d Cir. 2009));[10] a violation of Defendants' own corporate policies (*Novak v. Kasaks*, 216 F.3d 300, 311–12 (2d Cir. 2000)); or selective provision of, or reliance on, cherry-picked data (*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 2011 WL 3211472, at *5-10 (S.D.N.Y. July 29, 2011); *In re Pall Corp.*, 2009 WL 3111777, at *6–8 (E.D.N.Y. Sept. 21, 2009)). The Court should also reject Plaintiffs' new suggestion that Curaleaf's CBD product lines constituted a "core" element of the company's business. *See* Opp. at 22. If anything, the allegations in the Amended

---

[10] A desire for aggressive expansion, *see* Opp. at 22–23, is not enough. The Company or its officers must have "benefitted in some concrete and personal way"; "[m]otives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *ECA Local 134*, 553 F.3d at 198.

Complaint demonstrate that the Company's "core" operation involves cannabis dispensation through states' medical marijuana regimes, a distinct line of business from selling CBD products.[11]

At bottom, Plaintiffs suggest Defendants invested time and resources in CBD products they knew were "doomed" to be regulated as unapproved new drugs, "all the while misrepresenting to the public" their nature. *Cf. Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016) (rejecting claim that company misrepresented prospect of FDA approval that was "effectively foreclosed"). This theory is not nearly as "cogent" and "compelling" as the alternative inference that Defendants believed the disclosures in the Company's securities filings were adequate.

## III. The Amended Complaint Does Not Allege A "Domestic Transaction."

Plaintiffs treat Defendants' argument under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), as jurisdictional and offer a supplemental declaration from the Lead Plaintiff to establish a "domestic transaction." Opp. at 9–10. But "*Morrison* makes clear that whether § 10(b) applies to certain conduct is a 'merits' question," not jurisdictional. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012). Again, Plaintiffs should not be permitted to "amend [their] pleadings in [their] briefing papers." *Enzo Biochem*, 981 F. Supp. 2d at 223. The Amended Complaint therefore still fails to state a claim under *Morrison.*

* * *

Finally, Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice, and deny leave to amend. The lengthy Amended Complaint reflects significant changes from the original complaint. *See City of Pontiac*, 752 F.3d at 188. Moreover, the false advertising theory advanced for the first time in Plaintiffs' brief is deficient as a matter of law.

---

[11] *See, e.g.,* AC ¶ 14 (noting that Curaleaf "operates 50 cannabis dispensaries across 12 states, has 14 cannabis cultivation sites and 13 processing sites, and has over 1,150,000 active wholesale cannabis dispensary accounts").

Dated:  July 3, 2020

Respectfully submitted,

JENNER & BLOCK LLP

By:  /s/ Stephen L. Ascher

Stephen L. Ascher (SA7820)
Andrew J. Lichtman (AL1208)
Jeremy H. Ershow
Allison N. Douglis
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022-3908
Phone: 212-891-1600
Fax: 212-891-1699
sascher@jenner.com
alichtman@jenner.com
jershow@jenner.com
adouglis@jenner.com

*Attorneys for Defendants*

11